UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DARRELL KEM,**

      **Plaintiff,**

      v.

**BERING STRAITS INFORMATION
TECHNOLOGY, et al.,**

      **Defendants.**

Case No. 2:14-cv-263
**JUDGE GREGORY L. FROST**
Magistrate Judge E.A. Preston Deavers

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' motion to dismiss for failure to state a claim (ECF No. 13), Plaintiff's response in opposition (ECF No. 16), and Defendants' reply memorandum (ECF No. 17).  For the reasons that follow, the Court **GRANTS** the motion to dismiss Count One of Plaintiff's Complaint and **DISMISSES** Count Two of Plaintiff's Complaint without prejudice to it being filed in state court.

The following motions and corresponding briefs also are before the Court: Defendants' motion to stay discovery or to extend time to respond to discovery requests (ECF No. 25), Plaintiff's response in opposition (ECF No. 26), and Defendants' reply (ECF No. 28), as well as Plaintiff's motion to amend his Complaint (ECF No. 29).  The Court **DENIES AS MOOT** the motion to stay (ECF No. 25) and **DENIES** the motion for leave to amend.  (ECF No. 29.)

**I.  BACKGROUND**

The facts set forth below are taken from Plaintiff's complaint and are assumed true for purposes of this Opinion and Order.

1

Plaintiff is a former employee of Defendant Bering Straits Information Technology ("BSIT"), a defense contractor doing business at the Defense Supply Center ("DSC") in Columbus, Ohio.  The United States Department of Defense operates the DSC.  According to Plaintiff, BSIT's work at the DSC "involves management and performance of a federal contract that requires it to supply U.S. combat units overseas with critically needed aircraft parts via efficient management of a supply chain flowing from warehouses controlled by the [Defense Logistics Agency] outside Columbus airport."  (ECF No. 1 ¶ 3.)

Plaintiff began working for BSIT on July 1, 2013 as a Senior Program Analyst.  The duties of that position include "making sure the employer and its subsidiaries and sub-contractors are not violating the federal False Claims Act[, 31 U.S.C. § 3729 et seq.]" ("FCA").  (*Id.* ¶ 5.)

On July 10, 2013, ten days after he began his employment with BSIT, Plaintiff attended an internal meeting in preparation for an inspection by the Inspector General of the DSC.  BSIT's Audit Manager advised employees in that meeting to bring any instances of overcharging the government to his attention.

Following that meeting, Plaintiff advised his supervisor that he previously conducted an audit of a different defense contractor and "blew a whistle on over charging."  (*Id.* ¶ 11.)  Plaintiff "volunteered to help [BSIT] prepare for the audit by advising [BSIT's Audit Manager] of his experience."  (*Id.*)

At some point following that conversation, BSIT revoked Plaintiff's security clearance.  BSIT terminated Plaintiff's employment on August 22, 2013 for want of a security clearance.

Plaintiff's theory of this case is that BSIT terminated his employment "out of fear he would discover his employer or another party affiliated with the Defendant engaged in fraudulent

2

billing activity and report it to the government." (*Id.* ¶ 13.) Plaintiff believes that BSIT acted unlawfully by terminating his employment "because he volunteer[ed] to help an employer prevent defrauding the United States government." (*Id.*)

Plaintiff filed his complaint on March 18, 2014. He brings two claims for relief against BSIT and its parent company, Bering Straits Native Corporation (together with BSIT, "Bering"): (1) for retaliatory discharge in violation of § 3730(h)(1) of the FCA, and (2) for wrongful termination in violation of public policy. Bering now moves to dismiss both claims.

## II.     ANALYSIS

### A.  Standard of Review

Dismissal pursuant to Rule 12(b)(6) is proper if the complaint fails to state a claim upon which the Court can grant relief. Fed. R. Civ. P. 12(b)(6). The court must construe the pleading in favor of the party asserting the claim, accept the factual allegations contained therein as true, and determine whether those factual allegations present a plausible claim for relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007). To be considered plausible, a claim must be more than merely conceivable. *Id.*; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). "Factual content" requires more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. In other words, a court need not "accept as true a legal conclusion couched as a factual allegation." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### B. Unlawful Retaliation Under the FCA

The FCA prohibits, *inter alia*, knowingly presenting a false or fraudulent claim for payment or approval to an officer, employee, or agent of the United States (in addition to contractors and other recipients if the money or property is to be spent or used on the Government's behalf). 31 U.S.C. § 3729. The law includes a qui tam provision that allows private persons to bring civil actions for violations of § 3729 in the Government's name. *Id*. § 3730(b). The law also prohibits retaliatory actions against employees who are "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop [one] or more violations of this subchapter." *Id*. § 3730(h)(1). "The purpose of the FCA is 'to encourage any individual knowing of Government fraud to bring that information forward.' " *Yuhasz v. Brush Wellman, Inc*., 341 F.3d 559, 562 (6th Cir. 2003) (quoting *United States ex rel. McKenzie v. BellSouth Telecomm., Inc*., 123 F.3d 935, 938 (6th Cir. 1997)).

To establish a claim for retaliatory discharge, a plaintiff must allege that: (1) he engaged in a protected activity; (2) his employer knew he engaged in the protected activity; and (3) his employer discharged or otherwise discriminated against him as a result of the protected activity. *Id*. (quoting *McKenzie v. BellSouth Telecomm., Inc*., 219 F.3d 508, 513–514 (6th Cir. 2000) ("*McKenzie II*")). "Protected activity" refers to one of two types of actions: those "in furtherance of an action under [section 3730 of the FCA]," or those "in furtherance of . . . other efforts to stop [one] or more violations of [the FCA]." *See id*.; 31 U.S.C. § 3730(h).

4

To demonstrate retaliatory discharge based on the first type of protected activity, a plaintiff must allege that "the defendants had been put on notice that the plaintiff was either taking action in furtherance of a private qui tam action or assisting in an FCA action brought by the government." *Yuhasz*, 341 F.3d at 567 (quoting *United States ex. rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir. 1996)); *see also McKenzie II*, 219 F.3d at 515 (stating that the protected activity "requires a nexus with the 'in furtherance of' prong of an FCA action"). Merely informing the employer that its practices are or might be illegal, especially if monitoring and reporting are included within the employee's job responsibilities, does not put an employer on notice that the employee is pursuing an action under the FCA. *See Yuhasz*, 341 F.3d at 567–68 (discussing *United States ex. rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir. 1996)).

Because Plaintiff does not allege that he was acting in furtherance of an FCA action or assisting in an FCA action at any relevant time, his allegation that he volunteered to help BSIT with an audit does not establish the first type of protected activity. *See id*. That is especially true given that Plaintiff's job responsibilities involved making sure BSIT did not violate the FCA. *See id*.

The question becomes whether Plaintiff's allegations support the inference that he engaged in the second type of protected activity. More specifically, the issue is whether Plaintiff's actions in volunteering to help BSIT prepare for an upcoming audit by advising BSIT's Audit Manager that he previously blew the whistle on a different contractor's overcharging constitute actions "in furtherance of . . . other efforts to stop [one] or more violations of [the FCA]."

Having reviewed the parties' arguments and cited authority, the Court agrees with BSIT that § 3730(h) does not cover the conduct Plaintiff alleges. Both the plain language of the statute and relevant caselaw suggest that, to receive protection under the statute, an employee must be pursuing an effort to stop a *specific* violation (or potential violation) of the FCA of which he or she is aware. *See* 31 U.S.C. § 3730(h); *see also Jones-McNamara v. Holzer Health Sys., Inc*., No. 2:13-cv-616, 2014 WL 1671495, at **3–5 (S.D. Ohio Apr. 28, 2014) (stating that protected conduct could "take the form of trying to stop the misconduct by external means (e.g., an FCA action) or by internal means (e.g., reporting violations up a company's chain of command in an effort to effectuate institutional course correction)");[1] *Watts v. Lyon Cty. Ambulance Serv*., No. 5:12-CV-00060, 2013 WL 557274, at *8 (W.D. Ky. Feb. 12, 2013) (defining protected activity as that which is related to a viable FCA claim, even if the alleged wrongdoer is innocent); *Thompson v. Quorum Health Res., LLC*, No. 1:06-CV-168, 2010 WL 234801, at *3 (W.D. Ky. Jan. 13, 2010) (stating that, to prove he was engaged in protected activity, the plaintiff had to show that "a reasonable person in [his] position would have believed that the employer was possibility committing fraud against the government"); *accord Frett v. Howard Univ*., No. 13-551, 2014 WL 939499, at *7 (D.D.C. Mar. 10, 2014) (dismissing an FCA retaliation claim

---

[1] As this Court previously explained in *Jones-McNamara*, Congress amended the FCA in 2009 and 2010 to broaden scope of § 3730(h). Specifically, Congress amended § 3730(h) (which used to prohibit retaliation "because of lawful acts done by the employee on behalf of the employee or *others in furtherance of an action under this section*, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section") to prohibit retaliation "because of lawful acts done by the employee, contractor, agent or associated others *in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter*." *See Jones-McNamara*, 2014 WL 1671495, at *3; 31 U.S.C. § 3730(h) (emphasis added). That amendment evinces Congress' intent "to afford greater protections to individuals who are attempting to stop violations of the law," *Jones-McNamara*, 2014 WL 1671495, at *4; however, it does not suggest an intent to extend § 3730(h)'s reach to an employee's general desire to prevent unspecified FCA violations.

because the plaintiff alleged only that she had undertaken an investigation of her employer and not that any viable FCA claim existed).

Conversely, the Court is not aware of any authority in which a court held that "protected activity" encompasses an employee's general desire to prevent or uncover unspecified fraudulent acts. Rather than citing cases in which a court entertained such a claim, Plaintiff argues that "protected activity" covers those situations in which an employee "is involved in an investigation which 'reasonably could be calculated to be,' [sic] viable actions under the FCA," "is engaged in gathering information about a possible FCA violation and putting the pieces of the puzzle together," and/or "has confronted the employer with his or her concerns as to possible fraudulent activity taking place by the employer." (ECF No. 16, at 5 (citing *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996), *Neal v. Honeywell, Inc*., 33 F.3d 860, 864 (7th Cir. 1994), and *Mikes v. Strauss*, 889 F. Supp. 746, 752–53 (S.D.N.Y. 1995)).) Even if true, however, Plaintiff does not allege that he was involved in an investigation into BSIT's conduct, that he was engaged in gathering information about a possible FCA violation in which BSIT was involved, and/or that he had confronted BSIT with concerns about fraudulent activity. Plaintiff's cited authority therefore is inapplicable to this case.

In summary, even viewing Plaintiff's allegations in the light most favorable to him and drawing all inferences in his favor, the most Plaintiff alleged in this case is that he expressed an interest in helping BSIT prepare for an audit and that he was uniquely qualified for that role based on his past audit experience. Such conduct is analogous to expressing an interest in a compliance position, which common sense dictates is not protected activity within the plain

language of § 3730(h). Such conduct therefore does not constitute protected activity within the meaning of § 3730(h).[2]

As a final note, the Court addresses Plaintiff's argument that "[n]o excuse for Plaintiff's termination has been offered by the Defendant who refuses to tell even the Plaintiff's Congressman why his security clearance was pulled as a means to terminate his employment . . . Plaintiff should be allowed to conduct discovery to buttress his claims to prevent an injustice before the Court rules on the Defendant's motion." (ECF No. 16, at 11.) Plaintiff further speculates: "Assuming all plead [sic] facts are true is there any other conceivable purpose for firing the Plaintiff than to intimidate and discourage the identification and reporting of FCA violations?" (*Id*. at 12.) But that argument directly contradicts the United States Supreme Court's mandate in *Twombly* that, to state a claim under Federal Rule of Civil Procedure 8, a plaintiff must allege facts that present a plausible claim for relief—i.e., the claim must be more than merely conceivable. *Twombly*, 550 U.S. at 570. The Court cannot assume from Plaintiff's allegations that BSIT engaged in conduct that could form the basis of a viable FCA claim. Absent any link to a specific violation (or suspected violation) of the FCA, the Court cannot assume facts that support a viable retaliation claim under § 3730(h).

---

[2] The Court notes that Plaintiff does not allege or argue that his allegations should be interpreted in a different way: that BSIT fired him in retaliation for his conduct in previously blowing the whistle on a different contractor. Plaintiff does not offer any authority in which a court entertained such a claim. Plaintiff similarly does not argue that such a claim falls within § 3730(h)'s plain language. Moreover, the Complaint contains minimal factual support for Plaintiff's allegation that he "blew a whistle on over charging" and "received awards for saving the government millions of dollars in audits with previous defense contractor employers," (ECF No. 1 ¶ 11), such as whether he pursued a qui tam action against those contractors or prepared an internal report regarding suspected violations. The Court therefore will not address any such interpretation of Plaintiff's claim.

For those reasons, the Court finds that Plaintiff fails to state a claim under § 3730(h) of the FCA. The Court therefore **GRANTS** Bering's motion to dismiss Count One of Plaintiff's Complaint.

### C. Supplemental Jurisdiction Over State-Law Claim

Plaintiff alleges that this Court has original jurisdiction over his FCA claim pursuant to 28 U.S.C. § 1331. Plaintiff also alleges that this Court has supplemental jurisdiction over his state-law claim pursuant to 28 U.S.C. § 1367.

Having determined that Rule 12(b)(6) mandates dismissal of Plaintiff's FCA claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claim. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim [if] . . . the district court has dismissed all claims over which it has original jurisdiction"); *LaBorde v. City of Gahanna*, 946 F. Supp. 2d 725, 736 (S.D. Ohio 2013) (declining to exercise supplemental jurisdiction over a plaintiff's state-law claims when it dismissed the federal claims at the Rule 12(b)(6) motion to dismiss stage). Because this case is in the nascent stages of litigation, no factual findings have yet been made, and Ohio courts are better equipped to adjudicate claims based on the public policy of the state, among other things, the factors of judicial economy, convenience, fairness and comity weigh against exercising supplemental jurisdiction in this case. *See LaBorde*, 946 F. Supp. 2d at 736; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims . . . [r]esidual jurisdiction should be exercised only in cases where the 'interests of judicial economy and the avoidance of multiplicity of litigation' outweigh our concern over 'needlessly deciding state law

issues.' (quoting *Landefeld v. Marion Gen. Hosp., Inc*., 994 F.2d 1178, 1182 (6th Cir. 1993))). The Court therefore **DISMISSES WITHOUT PREJUDICE** Plaintiff's state-law claim.

### D. Bering's Motion to Stay Discovery (ECF No. 25)

Having determined that dismissal of Plaintiff's complaint is warranted, the Court **DENIES AS MOOT** Bering's motion to stay discovery pending resolution of the motion to dismiss. (ECF No. 25.)

### E. Plaintiff's Motion to Amend Complaint (ECF No. 29)

In his motion for leave to file an amended complaint, Plaintiff does not identify any additional facts in support of his FCA retaliation claim. Plaintiff does, however, attempt to add an alternative claim for discovery pursuant to Ohio Revised Code § 2317.48. Specifically, Plaintiff asks Bering to identify the reason it terminated his employment and security clearance.

Although leave to amend should be given "freely . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), a court need not grant a motion for leave to amend "where amendment would be futile." *Miller v. Calhoun Cty*., 408 F.3d 803, 817 (6th Cir. 2005) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Id*. (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres*., 632 F.2d 21, 23 (6th Cir. 1980)).

The proposed additional claim in this case would not cure the deficiencies in Plaintiff's FCA claim. And because the Court has already declined to exercise supplemental jurisdiction over Plaintiff's state-law claims, Plaintiff's attempt to add an additional state-law claim to his Complaint has no impact on the Court's analysis. The Court therefore **DENIES** Plaintiff's motion for leave to amend his complaint. (ECF No. 29.)

### III.     CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for leave to amend his complaint (ECF No. 29), **DENIES AS MOOT** Bering's Motion to Stay Discovery (ECF No. 25), **GRANTS** Bering's motion to dismiss Count One of Plaintiff's Complaint (ECF No. 13), and **DISMISSES** Count Two of Plaintiff's Complaint without prejudice to it being filed in state court.  The Clerk is **DIRECTED** to enter judgment accordingly and terminate this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED**.

>  **/s/ Gregory L. Frost**
>  **GREGORY L. FROST**
>  **UNITED STATES DISTRICT JUDGE**